IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RICHARD ANTHONY JOHNSON,

                      Plaintiff,

  v.                                           OPINION and ORDER

JACOB GULLICKSON, JOSH MILLER, WADE            20-cv-496-jdp
BEARDSLEY, TOM XIONG, MARCUS WALDEN,
and JUSTIN GREUEL,

                      Defendants.

---

Pro se plaintiff Richard Anthony Johnson is suing several Eau Claire police officers for events leading up to his convictions for sexual assault of a child under the age of 16, child enticement, and marijuana possession with the intent to manufacture, distribute, or deliver. Johnson asserted many claims and issues in his amended complaint, but I have dismissed all but two claims. *See* Dkt. 42. Specifically, Johnson alleges that the officers pointed a gun at him without justification when they arrested him and refused to show him a warrant, in violation of the Fourth Amendment. Defendants move for summary judgment on both claims. Dkt. 59. For the reasons explained below, the court concludes that defendants are entitled to summary judgment on both claims.

BACKGROUND

The background facts are undisputed.

Defendants Jacob Gullickson, Josh Miller, Wade Beardsley, Tom Xiong, Marcus Walden, and Justin Gruel were all officers for the Eau Claire Police Department. In October 2017, Gullickson obtained a warrant to search the apartment where Johnson was staying.

Johnson was suspected of child sexual assault and providing drugs to minors, and officers relied on statements from the victim and her friends to obtain the warrant. Dkt. 37-8. Johnson admits that he had sexual contact with a child under the age of 16 and provided her with marijuana. Dkt. 37, ¶¶ 6–7, 10, 17, 39–40. He also admits that the victim and her friend gave statements to the police that he had sex with the victim and that he had given her drugs, including cocaine. Dkt. 37-12 and Dkt. 37-13.

All of the defendants except Xiong were involved in executing the search warrant. (Xiong's only involvement was taking witness statements.) Johnson was present at the apartment when the officers arrived. After Johnson opened the door, Gullickson pointed his gun at Johnson and ordered him and another occupant of the apartment to approach. Officers searched the apartment and took pictures. Gullickson continued pointing his gun at Johnson until he was handcuffed and placed under arrest, which may have been as long as five minutes.

A jury convicted Johnson of sexual assault of a child under 16 years of age in violation of Wis. Stat. § 948.02(2), child enticement in violation of § 948.07(1), and manufacture or delivery of THC, less than 200 grams, in violation of § 961.41(1)(h)1. *See State v. Johnson*, 2017CF1174 (Wis. Cir. Ct.), *available at* wcca.wicourts.gov.

## ANALYSIS

### A. Excessive force

Johnson is proceeding on a claim under the Fourth Amendment that all of the defendants used excessive force against him when they arrested him by pointing a gun at him without a reasonable basis for doing so. The basic question for an excessive force claim under the Fourth Amendment is whether the officer used "greater force than was reasonably

necessary." *Becker v. Elfreich*, 821 F.3d 920, 925 (7th Cir. 2016). This determination is made from the perspective of a reasonable officer in light of the totality of the circumstances known to the officer, without regard to the officer's intent or his subjective beliefs. *Williams v. Indiana State Police Dep't*, 797 F.3d 468, 472–73 (7th Cir. 2015); *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 724 (7th Cir. 2013). In assessing reasonableness, relevant factors include the seriousness and immediacy of any threat posed by the plaintiff, the severity of any suspected crime, and the extent of the plaintiff's resistance or interference with an officer's duties. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015). "[G]un pointing when an individual presents no danger is unreasonable and violates the Fourth Amendment." *Baird v. Renbarger*, 576 F.3d 340, 346–47 (7th Cir. 2009).

All of the defendants seek dismissal of this claim on two grounds. First, defendants say that no reasonable jury could find that pointing a gun at Johnson was excessive under the circumstances. Second, defendants say that they are entitled to qualified immunity. Under that doctrine, a plaintiff may not obtain damages for a constitutional violation against a public official unless the plaintiff shows that the official violated clearly established law. *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 725 (7th Cir. 2013). Law is clearly established on an excessive force claim if: (1) there is a "closely analogous case" holding that the specific type of force used by the defendants is excessive; or (2) "a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct in question." *Cibulka v. City of Madison*, 992 F.3d 633, 639–40 (7th Cir. 2021) (internal quotation marks and alterations omitted).

3

Defendants Beardsley, Walden, Xiong, and Gruel also move for summary judgment on a third ground. Specifically, they say that they didn't point a gun at Johnson, so they can't be held liable.

Gullickson admits that he drew his gun on Johnson. Dkt. 66, ¶ 14. Miller says that he was holding a taser, but he didn't point it at Johnson. Dkt. 68, ¶ 6. For the purpose of their summary judgment motion, defendants accept as true that both Gullickson and Miller pointed a gun at Johnson until he was handcuffed. But defendants cite Johnson's testimony in which he admits that he didn't see anyone other than Gullickson and Miller pointing a gun at him. Dkt. 73 (Johnson Dep. 29:22–32:22). Johnson cites no other testimony or evidence supporting an excessive force claim against Beardsley, Walden, Xiong, or Gruel. In fact, it's undisputed that Xiong wasn't even present during Johnson's arrest. Dkt. 69, ¶ 64. But even if I assume that one or more of these officers could be held liable for failing to intervene to stop Gullickson or Miller, *see Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005), I conclude that all defendants are entitled to summary judgment on the excessive force claim because it isn't clearly established that defendants' conduct violated the Fourth Amendment. *See Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 997 (7th Cir. 2019) (courts may "skip" the question of whether there was a constitutional violation "and proceed directly to the question whether a particular right was clearly established").

Defendants say that their conduct was reasonable for the following reasons: (1) defendants were entering the apartment based on a search warrant for illegal drugs; (2) defendants reasonably believed that Johnson had committed a child sexual assault; (3) defendants knew that one of the other residents of the apartment had a criminal record; (4) it is "standard procedure" for officers to enter a residence with their guns drawn when they

4

don't know what is happening inside; and (5) defendants pointed guns at Johnson only while they assessed the situation and handcuffed Johnson, which took no more than five minutes.

Johnson doesn't cite any evidence contradicting defendants' version of the facts. In his brief, he says that one of the officers "kept emphasizing the fact that the weapon could discharge at any time" and that Miller "did not stop pointing his weapon after plaintiff was handcuffed." Dkt. 75, at 8. But briefs aren't evidence. *Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015). Johnson didn't submit his own declaration to support his summary judgment position. He did submit a declaration from the other occupant of the apartment, but that declaration doesn't include either of the details from Johnson's brief. *See* Dkt. 76. In his deposition, Johnson stated that "nobody else pointed a gun at me" after the defendants "handcuffed me and took me out of the apartment," which contradicts the statement in his brief. Dkt. 73 (Johnson Dep. 43:12–23). Johnson points to no testimony from his deposition suggesting that any of the defendants warned him that "the weapon could discharge."

In light of the undisputed facts proposed by defendants and the failure of Johnson to cite evidence of any aggravating circumstances, the question is whether it was clearly established as of October 2017 that the Fourth Amendment prohibits police officers from pointing a gun at a suspect of drug and child sex offenses during his arrest until he is handcuffed. One might argue that such a display of force isn't necessary in the absence of additional evidence that the suspect may be violent. But the law wasn't clearly established in October 2017 that defendants' conduct was unconstitutional—and it isn't clearly established now.

The court of appeals has considered whether gun pointing is excessive force in several cases:

5

- In *McDonald v. Haskins*, the court held that an officer engaged in excessive force by pointing a gun at a nine-year-old child and threatening to the pull the trigger. 966 F.2d 292, 294 (7th Cir. 1992). The court noted that the child was not suspected of committing a crime and posed no safety threat. *Id.*

- In *Jacobs v. City of Chicago*, the court rejected a qualified immunity defense at the pleading stage for an officer who pointed a gun at an elderly man for ten minutes. 215 F.3d 758, 773–74 (7th Cir. 2000). The court relied on the plaintiff's allegations that the officer didn't have probable cause that the plaintiff had committed a crime and that the officer continued pointing his gun even after learning that the plaintiff wasn't the person he was searching for. *Id.*

- In *Williams v. City of Champaign*, the court held that pointing a gun at the plaintiff was justified when the officer reasonably believed that the plaintiff had just committed a robbery. 524 F.3d 826, 828 (7th Cir. 2008).

- In *United States v. Watson*, the court rejected an excessive force claim based on gun pointing because "the police had reasonable suspicion to think they were approaching an illegal seller of guns, who had guns in the car." 558 F.3d 702, 704 (7th Cir. 2009).

- In *Baird*, an officer obtained a search warrant for an antique car that he believed had an altered vehicle identification number. 576 F.3d at 342–43. The officer required everyone on the premises to get in the middle of the room while he pointed a submachine gun at them. *Id*. at 343. The court rejected the officer's assertion of qualified immunity, reasoning that (1) the suspected crime was "a far cry from crimes that contain the use of force as an element, crimes involving possession of illegal weapons, or drug crimes, all of which are associated with violence"; (2) police had been on the scene the previous day and had discovered nothing suggesting that their safety was endangered; and (3) no one present resisted or attempted to flee. *Id.* at 344–46.

- In *Cherry v. Washington Cty., Wis.*, the court held that the officers didn't use excessive force by pointing a gun at a suspect after they found shotgun shells in his residence. 526 F. App'x 683, 687 (7th Cir. 2013).

In addition to these cases, there is *Wilkins v. May*, in which the court stated in dicta that "the action of a police officer in pointing a gun at a person is not, in and of itself, actionable. . . . Where the officer merely points a gun at a suspect in the course of arresting him, the suspect would have no basis for claiming that he had been seized with excessive force in violation of the Constitution." 872 F.2d 190, 194 (7th Cir. 1989). But as noted by the court

6

in *Baird*, *Wilkins* relied on a view that an excessive force claim requires a physical injury, a view the court of appeals has since rejected. 576 F.3d 340, 346 (7th Cir. 2009). So the precedential value of *Wilkins* is limited.

The facts of this case don't fall squarely within the previous cases decided by the court of appeals. On one hand, defendants cite no evidence that Johnson resisted arrest, that he was armed, or that he had committed a crime involving a weapon, as was the situation in the cases where the court of appeals concluded that the use of force was reasonable. On the other hand, the aggravating factors that were present in the cases rejecting a qualified immunity defense aren't present in this case: Johnson is an adult, he was suspected of multiple crimes, and there is no evidence that any of the defendants verbally threatened him.

Previous cases don't clearly show that the use of force by defendants was reasonable, but they also don't clearly show that it was unreasonable, which is generally enough for a qualified immunity defense. *See Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (right isn't clearly established unless it was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right" (internal quotations omitted)). And this is not a case in which a constitutional violation is so obvious that a previous case on point isn't needed. *See Cibulka*, 992 F.3d at 639–40.

In *Baird*, the court stated the general rule as follows: "[W]hile police are not entitled to point their guns at citizens when there is no hint of danger, they are allowed to do so when there is reason to fear danger." 576 F.3d at 346. In this case, Johnson may not have been posed a clear threat, but defendants had some reason to fear danger. Witnesses informed the police that illegal drugs were on the premises, including cocaine, Dkt. 69, ¶ 14, and "there is a frequently noted, well-known connection between guns and drugs." *United States v. Spaulding*,

7

366 F. App'x 670, 673 (7th Cir. 2010) (internal quotation marks omitted). And sexual assault of a child is a serious crime. More generally, defendants had no way of knowing when they entered the apartment whether Johnson was armed or how dangerous the situation might be. Under these circumstances, it wasn't obviously unreasonable for defendants to believe that they needed to protect themselves until Johnson was restrained. *See Watson*, 558 F.3d at 704 (concluding that officers were "entitled for their own protection to approach" suspect with guns pointed). This conclusion is consistent with *Rebolar ex rel. Rebolar v. City of Chicago, Ill.*, 897 F. Supp. 2d 723, 736–37 (N.D. Ill. 2012), an excessive force case in which the court granted summary judgment to officers who pointed a gun at a burglary suspect for about five minutes until he was handcuffed. The court will grant defendants' motion for summary judgment on this claim.

## B. Search warrant

Johnson is proceeding on a claim that the search of the apartment was unreasonable, in violation of the Fourth Amendment, because defendants refused to show him the search warrant even after they were finished conducting the search. In allowing this claim to go forward, I relied on a statement from *United States v. Grubbs*, 547 U.S. 90, 99 (2006), that there is no "constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended," which left open the possibility that the Fourth Amendment requires officers to display a valid search warrant at the conclusion of the search.

I agree with defendants that this claim is foreclosed by *United States v. Cazares-Olivas*, 515 F.3d 726, 729 (7th Cir. 2008), which holds that "the [F]ourth [A]mendment does not require officers to have a warrant in hand when searching." If a copy of the warrant isn't needed

8

for a valid search, it follows that an officer's refusal to display the warrant doesn't violate the Fourth Amendment either.

Johnson complains that he didn't see the warrant until long after he was charged. Even if that is true, Johnson hasn't presented any evidence that defendants are responsible for that delay. Defendants are entitled to summary judgment on this claim.

**C. Other issues**

Most of Johnson's brief is devoted to issues outside the scope of this case, primarily relating to his belief that his convictions and the investigation leading up to them were unfair. I dismissed many of those claims in previous orders, either because they relate to the validity of his convictions (which can't be challenged in a civil case) or because they failed to state a claim upon which relief may be granted. It isn't clear why Johnson continues to raise these issues, but it isn't necessary to discuss them again in this opinion.

ORDER

IT IS ORDERED that defendants' motion for summary judgment, Dkt. 59, is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered December 20, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge